IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAHOGANY BOLDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-150-DWD |
| | ) |
| WALMART STORES, INC., and | ) |
| BEIERSDORF, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Now before the Court are four pending motions: Defendant Beiersdorf, Inc.'s Motion to Amend Protective Order (Doc. 54), and Plaintiff Mahogany Bolden's (a) Motion for Leave to File Redacted Customer Complaints under Seal (Doc. 58), (b) Third Motion to Compel (Doc. 60), and (c) Motion for Extension of Time to Disclose Experts (Doc. 61). The Court has reviewed all responses and replies to the pending motions (*See* Docs. 59, 62, 63, 64, 69, and 70), and a hearing was held on March 2, 2021. Following arguments from Counsel, and for the reasons detailed below, the Court disposes of the motions as follows:

1. Defendant's Motion to Amend Protective Order (Doc. 54) is **DENIED**;

2. Plaintiff's Motion for Leave (Doc. 58) is **GRANTED**;

3. Plaintiff's Third Motion to Compel (Doc. 60) is **GRANTED, in part, and DENIED in part**; and

4. Plaintiff's Motion for Extension of Time (Doc. 61) is **GRANTED**.

1

**Admonishment**

The parties have had considerable problems in resolving discovery issues in this matter. Since the case's reassignment in October 2020, the Court has held at least three hearings on these discovery disputes and has spent considerable resources in reviewing voluminous motions and responses on matters which the Court considers relatively simple. The Court has further ordered the parties to meet and confer on at least three occasions, resulting in minimal success. The Court would be remiss not to consider the impact these discovery delays are having in this matter and on the parties. While strong advocacy may certainly be in the parties' best interest, the potential harm caused by their counsels' unyielding approach to discovery disputes is striking and runs counter to the spirit of Federal Rules of Civil Procedure 26 and 37. The Court further admonishes the parties that before requesting any further intervention from this Court on discovery matters, they must review the requirements of Rules 26 and 37 and seriously consider whether the matter requires the Court's involvement. The Court will consider an award of fees should future discovery disputes arise. Fed. R. Civ. P. 37(a)(5); *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994) (Rule 37(a)(4) (now contained in Rule 37(a)(5)) "is a fee-shifting rule. The winner is entitled to fees unless the opponent establishes that his position was 'substantially justified.'").

**Background**

In this matter, Plaintiff alleges injuries resulting from her use of "Nivea Skin Firming Hydration Body Lotion" which is manufactured by Defendant (the "Product"). The parties represent that Plaintiff purchased the Product in 2017 and used the Product

in 2018. According to Defendant, the chemical formula for "Nivea Skin Firming Hydration Body Lotion" has been reformulated at least twice since its first production. The parties now agree that the Product formula used by Plaintiff was manufactured in September 2017 and was therefore the 2015 reiteration of Defendant's "Nivea Skin Firming Hydration Body Lotion." According to Defendant's counsel, the 2015 reiteration is not the reiteration currently in production and on the market.

On December 11, 2020, the Court ordered Defendant to produce certain documents to Plaintiff by January 8, 2021 (Doc. 51). These documents were to include "<u>all</u> copies of consumer complaints (without categorical qualifications) from the five (5) year period prior to the reformulation in 2015 (and the presumed formula of the Product in Plaintiff's possession), specifically from January 1, 2010 through the present." (*Id.*). Defendant was further ordered to redact all personal identifying information of the complainants (*Id.*). Plaintiff received those documents on January 13, 2021 (Doc. 53). The parties' current discovery dispute generally concerns three issues related to these customer complaints: (1) Plaintiff's request to conduct a deposition or further discovery into these customer complaints, (2) the appropriate limitations of searching electronically stored information ("ESI"); and (3) Plaintiff's disclosure of expert witnesses. Each will be discussed in turn.

### Plaintiff's Motion for Leave

By her Motion for Leave (Doc. 58), Plaintiff seeks leave to submit the customer complaints as produced by Defendant to the Court for an *in camera* review. Defendant did not respond or file an objection to Plaintiff's Motion for Leave. Accordingly,

Plaintiff's Motion is **GRANTED**. The Court has further reviewed the documents submitted (labeled as "Bolden Complaints per Order- PO 0001-0051", and hereinafter referred to as "Produced Complaints"). The Produced Complaints purport to show redacted individual complaints from 2010-2020 and appear to be the complaints Defendant was required to produce in accordance with the Court Order at Doc. 51.

### Defendant's Motion to Amend

By Defendant's Motion to Amend (Doc. 54), Defendant requests to amend the parties' Protective Order at Doc. 42 so to include the Produced Complaints in the category of "protected documents", arguing that the complaints contain commercial and sensitive information that are not otherwise available to the public. Defendant postulates that without the protection of the Protective Order Defendant would be detrimentally harmed by the publication of the Produced Complaints. Defendant argues that its customers could draw negative inferences from the complaints, especially if the complaints are published without the context of the Product's overall complaint rates (which Defendant maintains are remarkably low based on industry standards). Defendant also argues that the complaints are entitled to protection as "trade secrets" under the Illinois Trade Secrets Act, 765 ILCS 1065/2, and because the complaints have intrinsic privacy issues requiring protections akin to those under the Health Insurance Portability and Accountability Act ("HIPAA"). Finally, Defendant states that subjecting the complaints to the parties' existing protective order will not prejudice Plaintiff.

In turn, Plaintiff argues that the Produced Complaints are not entitled to protection because all personal identifying information has been redacted, thereby

4

relieving any privacy concerns. Plaintiff also highlights that many of these complaints are already available in the public domain on Defendant's website. To support this contention, Plaintiff supplied copies of customer complaints Plaintiff's counsel allegedly obtained from Defendant's public website (Doc. 59-3)[1]. Plaintiff also refutes Defendant's fear that the publication of the Produced Complaints would unfairly be taken out of context, arguing that Defendant has inserted the customer complaint rate into various filings in this matter. Finally, Plaintiff's counsel maintains that Plaintiff will suffer prejudice should these complaints be subjected to the existing Protective Order, in part, because Plaintiff's counsel will be obligated to comply with the terms of the Protective Order each time Plaintiff references the complaints in her court filings.

Preliminarily, the Court observes that the parties agree that any authenticated complaints found or originating in the public domain (such as an internet review website for the Product) would not be subject to the Protective Order. However, there is no indication in the record whether the Produced Complaints are or are not available in the public domain (whether now, or at the time the complaints were submitted to Defendant). The Court cannot, therefore, readily determine which of these complaints, if any, would not be subject to the Protective Order if amended. Although, in briefly comparing the complaints attached at Doc. 59-3 to the "Produced Complaints" the Court observes many similarities between the two sets of complaints, and speculates that there

---

[1] Defendant objects to these complaints as "undisclosed, unauthenticated documents." (Doc. 64). However, Defendant agrees that if a complaint is properly authenticated and found in the public domain, then that complaint would not be subject to the protective order if amended.

may be significant overlap between the two.[2] If Defendant would like to argue that all of its customer complaints are protected because of how each individual complainant chose to submit the complaint, then it is incumbent on Defendant – as the party with the burden here – to provide enough information to Plaintiff (and the Court) as to how these complaints originated and whether the complaints are publicly available.

The Court is also unpersuaded that the redacted customer complaints disclosed by Defendant contain such sensitive or commercial information so to require a protective order. Indeed, the Produced Complaints are already redacted and contain no personal identifying information, so there is little, if any, privacy concern here. Defendant's counsel confirmed at the March 2nd hearing that there would be no way to correlate a specific complaint to a specific individual. Furthermore, the Court finds that the speculative harm to Defendant's reputation if these complaints are not subjected to the parties' Protective Order, is just that: speculative. Nevertheless, in the event such theoretical harm materializes, Defendant may seek appropriate recourse from this Court or pursue other available remedies. The Court also observes that Defendant's counsel has argued – at each hearing, and in most documents concerning these complaints – that the customer complaints for the Product are "remarkably low." Therefore, these

---

[2] In so finding, the Court does not opine on the authenticity of either set of complaints and makes no findings as to the relevancy or appropriateness of these documents. In deciding the issues currently before the Court, the Court is not relying on either set of documents, and the Court draws no conclusions from these documents as they may relate to other issues in this matter. The Court cautions the parties that the observations the Court makes herein are limited solely to the discovery issues before it, and do not in any way indicate how the Court may rule on subsequent issues related to these documents in this matter.

statements will provide some context for the customer complaints so to diminish Defendant's fears of confusing its customers.

Finally, the Court notes that although Plaintiff will likely suffer little, if any prejudice should the customer complaints be subjected to the existing protective order, the existing Protective Order does require heightened Court intervention and limits the ability of Plaintiff's counsel to use these Produced Complaints in court filings (Doc. 42). The Protective Order further limits Plaintiff's counsel's ability to produce copies of protective documents to his clients (Doc. 42, at ¶ 2) ("Plaintiff's counsel can obtain a copy of the Protected Documents. Plaintiff's counsel may discuss the content of the Protected Documents with Plaintiff but may not provide Plaintiff with copies of the documents."). Therefore, in balancing the hypothetical harm Defendant may suffer should the Protective Order not be amended, compared to the heightened burden Plaintiff faces in needing to comply with the terms of the Protective Order should the customer complaints be subjected to it, the Court finds that the balance slightly favors Plaintiff.

As Defendant has not met its burden to show that the Protective Order at Doc. 42 should be amended at this time, Defendant's Motion to Amend (Doc. 54) is **DENIED**.

### Plaintiff's Motion to Compel

By Plaintiff's Motion to Compel (Doc. 60), Plaintiff seeks to depose Defendant's corporate representative concerning the Produced Complaints, largely for authentication purposes. Plaintiff also seeks to compel an ESI search of Defendant's interoffice communications. Defendant objects to further investigation into the Produced Complaints, primarily because of the large (and potentially lengthy) scope of Plaintiff's

7

proposed investigations. Defendant argues that providing testimony on each individual complaint in the 51-pages of Produced Complaints would far exceed the needs of this case and be unduly burdensome. Likewise, Defendant argues that the current ESI search as proposed by Plaintiff would be too burdensome and expensive, and requests that the Court place limitations on the search and/or order Plaintiff to pay the costs of the search.

## Corporate Representative Deposition

Plaintiff is entitled to conduct further investigation into the Produced Complaints, and may explore certain topics related to those Produced Complaints, such as information related to the underlying documents supporting the Produced Complaints, as well as Defendant's actions taken before or after receiving the Produced Complaints[3]. However, such discovery (and particularly any resulting deposition) must be limited in duration and scope.

At the March 2, 2021 hearing, the Court suggested that a reasonable scope limitation might include limiting deposition testimony to categories or groupings of specific complaints based on their underlying documents. However, in discussing with the parties, the Court subsequently learned from Defendant's counsel that Defendant has not yet reviewed any of its physical records related to the Produced Complaints. Instead, the Produced Complaints which were provided to Plaintiff were merely printouts of material stored in an electronic database. Defendant's counsel confirmed that the

---

[3] Again, the Court cautions the parties, that this list of potential topics of exploration is largely illustrative and is not a finding limiting the range of topics Plaintiff may seek to investigate related to these documents. Indeed, the Court will not at this time impose any limitations on the topics or subjects Plaintiff may wish to further explore here.

Produced Complaints originated from an electronic database where an agent or employee of Defendant inputted the original complaint as received by the customer, and then categorized the complaint by product type and year.  However, Defendant did not produce or review any supporting documents that may exist related to each individual complaint.  Nor did Defendant produce any documents that Defendant's agent or employee may have reviewed when logging the complaints into the electronic database.  As such, Defendant's counsel represented that there may be additional physical documents that support these complaints, such as questionnaires Defendant sent to the complainants, and shipping labels and checks for complainants who returned their product.  However, Defendant's archival records have not yet been searched.

Since Defendant has not yet produced all underlying documents that may support the Produced Documents, the Court finds it premature to speculate on a reasonable scope limitation to impose on any corporate representative deposition.  Further, without assurances that all documents related to the Produced Complaints have been located, the Court questions whether Defendant's corporate designee could accurately testify as to the Produced Complaints.  As such, Defendant is **ORDERED** to produce to Plaintiff **by April 1, 2021:** all documents related to the Produced Complaints, without categorical limitation, and specifically including any questionnaires or documents which were used or relied on by any employee or agent of Defendant in inputting complaints in Defendant's electronic database.  The time limitation governing this production is the same ten-year period already defined by the Court in the Order at Doc. 51, specifically from January 1, 2010 through the present.  Defendant does not need to produce any

shipping labels or checks which may have been sent to complainants by Defendant. Further, in producing these documents, Defendant **SHALL** redact all personal identifying information of the complainants.

Also, by April 1, 2021, Defendant **SHALL** disclose to Plaintiff's counsel, Defendant's corporate designee. Thereafter, the Parties are **ORDERED** to meet and confer within fifteen (15) days of Defendant's production and disclosure of a corporate designee, or by **April 15, 2021**, to discuss the appropriate scope limitations for the deposition of the corporate designee in accordance with the suggestions discussed by the Court and the parties at the March 2, 2021 hearing. Should the parties be unable to come to an agreeable solution as to the scope of the corporate representative deposition, the parties are again reminded that the Court may award expenses, including attorney's fees to the prevailing party of any resulting discovery dispute. Fed. R. Civ. P. 37(a)(5); *See Rickels*, 33 F.3d at 786.

## ESI Protocol

On December 11, 2020, the Court found that Plaintiff was entitled to discover: "the names of individuals and the specific communications concerning suggestions, if any, for modification of the Product" and "non-privileged interoffice communications concerning the Product", and (Doc. 51 at ¶¶ 4, 6). The Court further ordered the parties to meet and confer before December 23, 2020 to determine a mutually acceptable scope limitations to these requests, and to develop mutually acceptable ESI search terms for Defendant's investigation (*Id.*). There has been no resolution of acceptable ESI search terms between the parties, and each party blames the other for this failure. Defendant further argues

that the estimated cost to conduct a search of the emails of 6 individuals with approximately 16 different search terms, for a period of 6 years, would cost approximately $5,400.00 plus additional storages fees (Doc. 62 at ¶ 8).  Plaintiff's counsel responds that he provided a list of acceptable search terms to Defendant's counsel, but that Defendant is in the best position to know the appropriate terms needed to conduct a responsive search.

The Court does not have enough information before it to determine the appropriate limitations and terms for an ESI protocol in this matter, nor can the Court determine a reasonable cost for the proposed search at this time.  However, the Court is mindful that the parties may reasonably dispute the necessity of conducting a broader ESI search, depending on the parties' willingness to pay for additional search terms or email addresses.  As such, the Court finds that a cost-sharing approach to ESI may be necessary here.  However, at this time, the Court will explicitly reserve the issue of ESI costs to permit the parties additional time to work together to create more focused search terms.  Instead, the parties may later petition the Court for an appropriation of ESI costs should they be unable to come to a mutual agreement on ESI terms or costs, or in the event an overexpansive or unnecessary ESI search occurs.

Accordingly, the parties are **ORDERED** to meet and confer before **April 15, 2021** to determine mutually acceptable ESI search terms and the proper monetary limits of any search.  If necessary, the parties are encouraged to engage ESI consultants to assist in these efforts.  The parties are further advised to discuss potential cost sharing agreements should they be unable to reach an agreeable resolution.

**Plaintiff's Motion for Extension of Time**

Plaintiff seeks an extension of time to disclose her experts (Doc. 61). Plaintiff's current deadline to disclose her experts has already passed, but argues that Plaintiff needs additional time for disclosure because Plaintiff has not finished her investigation into the Produced Complaints so to determine if the Produced Complaints are reliable enough for her expert to use in formulating their opinion. Defendant counters, arguing that Plaintiff has received many extensions in this matter, and that Defendant is entitled to know why Plaintiff believes the Product at issue in this matter is unsafe so to properly prepare for trial. Defendant also argues that if any additional documentation would come from Plaintiff's continued investigation into the Produced Complaints, that Plaintiff would likely be permitted to supplement her expert's opinion with those documents.

The Court agrees with Defendant and is further unpersuaded that any issues related to the Produced Complaints at this time are correlated enough to prevent Plaintiff's potential expert from formulating their opinion or to justify further delay in this matter. However, cognizant that Plaintiff's disclosure deadline has already passed, the Court will permit Plaintiff additional time to disclose experts. Defendant will likewise be allowed additional time for its rebuttal witnesses. Plaintiff's Motion (Doc. 61) is **GRANTED**. Plaintiff **SHALL** disclose its experts by **April 12, 2021**. Defendant may disclose its witnesses by **May 22, 2021**. All other deadlines already set by this Court remain in effect. The parties are reminded that they may change/alter any discovery dates in the amended scheduling order by mutual agreement, so long as they do not impact the dates set for dispositive motions, the final pretrial conference, or the jury trial.

### Mediation

At the March 2, 2021 hearing, the topic of Mediation was raised. The Court is willing to assign this matter to a Magistrate Judge or other mediator for the purpose of conducting a mediation. However, at this time the Court will only order mediation if all parties agree. Therefore, all parties are **ORDERED** to submit a report to the Court by **March 9, 2021**, stating whether the parties consent to mediation, and if the parties do consent to mediation, whether the parties plan to use an outside mediator or require the Court to enter an appropriate order assigning this matter to a mediator. The parties **SHALL** submit their reports to the Court via e-mail at DWDpd@ilsd.uscourts.gov.

**SO ORDERED.**

Dated: March 4, 2021

_____
DAVID W. DUGAN
United States District Judge